## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

_____

|  |  |  |
|---|---|---|
| EDWARD C. SNUKIS, JR. and | ) | |
| SAMANTHA SNUKIS, | ) | |
| Co-Administrators of the Estate of | ) | |
| Edward C. Snukis | ) | |
| | ) | |
| Plaintiffs | ) | Civil Action No. 3:21-cv-135 |
| | ) | |
| CITY OF EVANSVILLE, INDIANA; | ) | |
| MATTHEW O. TAYLOR, in his individual capacity | ) | *Jury Trial Demanded Under* |
| as an Evansville police officer; | ) | *Fed. R. Civ. P. 38(b)* |
| TREVOR KOONTZ, in his individual capacity | ) | |
| as an Evansville police officer; and | ) | |
| NICHOLAS HACKWORTH, in his individual capacity | ) | |
| as an Evansville police officer | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

_____

### COMPLAINT AND DEMAND FOR JURY TRIAL

For their Complaint, Plaintiffs, by and through their attorneys, state and allege as follows:

### INTRODUCTION

1.      This Complaint arises out of the personal injury and wrongful death of Edward C. Snukis ("Ed") on  September 13, 2019, at the hands of officers of the City of Evansville Police Department (the "EPD").

### JURISDICTION

2.      The Court has subject matter jurisdiction of this case under 28 U.S.C. §1331 (federal question jurisdiction) because Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988(a) to vindicate rights guaranteed by the Constitution, statutes, and common law of the United States of

America. The Court has supplemental jurisdiction to adjudicate Plaintiffs' state law claims under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy.

## VENUE

3.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside and the events giving rise to the Plaintiffs' claims took place in this judicial district.

## PARTIES

4.     At the time of his death, Ed was a 55-year-old person who lived in St. Clair, Pennsylvania.  Ed was survived by his mother, Lucille Snukis, three (3) children, Samantha (age 35), Sierra (age 34), and Ed, Jr. (age 32), and six (6) grandchildren Brayden (age 12), Kennedy (age 10), Sophia (age 8), Corbin (age 7), Malachi (age 4), and Nia (age 2).

5.     Edward C. Snukis, Jr. and Samantha Snukis formally requested to become the legal representatives for Ed's estate on September 25, 2019, with the Schuykill County Register of Wills in Pottsville, Schuykill County, State of Pennsylvania.  An Order of Appointment of Domiciliary Foreign Estate Co-Administrators was granted to Edward C. Snukis, Jr. and Samantha Snukis by the Vanderburgh Superior Court, Probate Division on November 8, 2019 (the "Estate").  As co-administrators of the Estate, Edward C. Snukis, Jr. and Samantha Snukis have the authority to commence and maintain this lawsuit.

6.     The City of Evansville, Indiana (the "City") operates, manages, directs, and controls the EPD.

7.     On September 13, 2019, the City employed Matthew O. Taylor ("Taylor"), Trevor Koontz ("Koontz"), and Nicholas Hackworth ("Hackworth").  Taylor, Koontz, and Hackworth are sometimes referred to as the "Officers."

8.     The Officers were at all times relevant to this complaint employed as police officers by the City. In all instances described in this complaint, the Officers acted within the scope of their employment.

## NOTICE OF TORT CLAIM

9.     On March 9, 2020, a Notice of Tort Claim (the "Notice") was served on the City according to the requirements of IC 34-13-3-8.

## FACTUAL ALLEGATIONS

10.     On September 13, 2019, at approximately 7:44 PM, a 911 call was placed by an employee of D-Patrick Honda located at 4300 E. Division St., Evansville, Indiana.  The 911 caller indicated that Ed was "hanging around" and "appears to be impaired." The 911 caller indicated that Ed was standing out by the D-Patrick Collision center sign at Indiana and Congress near the road and that the caller was "afraid that he is going to get hit."  The 911 caller did not indicate that Ed was violent, armed, or had committed any crime.

11.     The EPD Event Report states that the first dispatch was issued at approximately 7:49 PM. The Report says that Ed was an "intoxicated person," and the priority for the call was described as "Priority 4."

12.     The priority of service calls is defined in the EPD Operational Guideline (OG 533.00). Priority 1 is a service call that involves a "Threat to life/public safety" and requires an "emergency response."  Priority 2 is a service call that "has the potential to develop into threat to life or property" and requires an "immediate response."  Priority 3 is a service call that involves "Disorderly Conduct, Shoplifter, PD Accident, etc." and requires an "immediate response."  Priority 4 is a service call for "Situations requiring a routine response in which there is no urgency involved. (Public Intoxication,

Standby, General Complaints, etc.)."  The expected response time for a Priority 4 service call is "within 1 hour."

13.     Based upon the information available at the time, Koontz and Taylor had no reason to believe that Ed was a danger to himself or others.

14.     Taylor and Koontz arrived at 7:52 PM.  Ed was not injured, combative, or in a restricted area.  However, immediately upon arriving and without any cause, notice, or warning, Koontz aggressively approached Ed and repeatedly demanded that Ed "put [his] hands on [his] head."

15.     Without speaking to Ed, Koontz grabbed Ed's arm. Ed asked, "Why? What's going on?"  Koontz never answered those questions.  By grabbing Ed's arm, Koontz was using force before it was justified or reasonable.

16.     Koontz and Taylor began yelling at Ed in a manner that would cause fear and distress in any reasonable person. Throughout the ordeal, neither Koontz nor Taylor asked Ed to identify himself or explained to Ed who they were or why they were there.

17.     As Ed pulled away from Koontz, Ed fell to the ground striking his head. Ed was tasered multiple times.  Ed tried to stand up and he was tasered again.  Koontz and Taylor continued yelling at Ed.  In a clear state of fear, Ed got to his feet and ran away from Koontz and Taylor. Koontz and Taylor gave chase and eventually caught up with Ed.  Ed fell face down on the ground, and Taylor and Koontz jumped on Ed and held him down.

18.     While on the ground unarmed and defenseless, Ed was assaulted and beaten by Koontz and Taylor.  The Officers forced Ed to remain prone on the ground with his head, face, and mouth in the dirt as they tried to handcuff his hands behind his back.  At the same time, the Officers used excessive force by exerting physical pressure with their hands, arms, and legs on Ed's head, neck, shoulders, chest, and back.  Even as Ed's speech became slurred and then silent and his breathing

became difficult and then stopped, Koontz and Taylor continued to assault and forcibly restrain Ed as he lay face down and lifeless on the ground.

19.     Hackworth arrived on the scene and participated in the assault by assisting with restraining and handcuffing Ed.

20.     The Officers' relentless assault was not justified under the law or circumstances and caused Ed fear, distress, extreme pain and suffering, unconsciousness, asphyxiation, and death.  The Officers did not have probable cause to arrest Ed or reasonable suspicion to conduct an investigatory detention.  Ed's actions were at all times reasonable responses to the excessive force used by the Officers.

21.     The brutal attack on Ed was the proximate cause of his injuries and death.  While the Officers assaulted Ed, who the Officers knew had no weapons and was not a threat to anyone, Ed's speech became slurred, he became unresponsive, he stopped breathing, and died.  At no time did the Officers have a justifiable reason to use the force they employed.

22.     The Officers had a duty to properly monitor Ed's breathing and pulse.  Once Ed was subdued, the Officers knew or should have known that Ed was unresponsive and had stopped breathing. The Officers had the legal authority and duty once Ed was in their custody to provide him with immediate medical care and request emergency medical assistance.  Instead, the Officers left Ed handcuffed face down on the ground for several minutes without any medical care or assistance.

23.     The Officers breached the standard of care and generally accepted police training and practices during their contact with Ed, including but not limited to the following:

       a.     Koontz did not have reasonable suspicion or probable cause to justify making physical contact with Ed and to use any level of force against Ed.

b. Taylor, as the Field Training Officer, and who was supervising Koontz, had a duty and obligation to intervene and stop Koontz from making physical contact with Ed and to stop Koontz from using force against Ed as Koontz did not have reasonable suspicion or probable cause to justify his conduct.

c. Taylor did not have reasonable suspicion or probable cause to justify using force against Ed.

d. Koontz and Taylor failed to recognize that Ed was exhibiting behavior that was indicative of a person who was in a mental health crisis and that he was not engaged in criminal conduct.

e. Taylor and Koontz failed to use de-escalation techniques during their contact with Ed to create time, distance, and space to allow for other viable resolutions, tactics and options during the contact with Ed.

f. The Officers failed to recognize that Ed was breathing in an abnormal fashion and was engaged in agonal breathing indicating that he was suffering from a medical emergency and was nearing death requiring the officers to cease assaulting him, provide immediate medical aid, and immediately summon emergency medical services for him.

g. The City failed to thoroughly investigate the Officers' conduct and the totality of circumstances that led to Ed's death while in the custody of the Officers and failed to hold the Officers accountable for, among other issues, use of excessive force, failure to intervene, failure to recognize that Ed was in a mental health crisis, failure to recognize that Ed was suffering from a medical emergency requiring immediate police

intervention, and failure to immediately provide/summon emergency medical services for Ed.

h.  The City failed to investigate and recognize obvious falsehoods in the Officers' accounts that Ed was "aggressive" and was "approaching the officers in an aggressive manner" when compared to video recordings and other evidence of the Officers' contact with Ed that demonstrate that the Officers' accounts were false.

i.  The City failed to train their officers and/or have sufficient policies on the core tasks of investigative detentions, searches, reasonable suspicion, probable cause, arrests, use of force, crisis intervention, duty to intervene, agonal breathing, medical distress, and providing/summoning emergency medical services, to prevent illegal detentions, excessive force, and the deaths of persons who are in the custody of their officers.

j.  But for the aforementioned conduct of the Officers, Ed would not have lost his life on September 13, 2019.

24.  The Defendants are not entitled to qualified immunity as the Officers' conduct violated a constitutional right clearly established at the time of the incident. The evidence is that the Officers attacked Ed from the moment they arrived on the scene, grabbing him, tasering him multiple times, chasing him, laying on top of him, repeatedly striking him in the head, back, and shoulders while at the same time applying unreasonable and unnecessary positional and compressive force to him as he lay face down on the ground even after he had stopped breathing and become unresponsive.

25.  The right to be free from the use of excessive force was clearly established under the law before the incident in question.  When the Officers arrived on the scene, they did not have reasonable suspicion to detain Ed nor probable cause to believe that Ed had committed any crime. The 911 caller indicated that Ed might be impaired and that he was worried that Ed might get hit by a

car.  The caller was concerned for Ed's wellbeing, and did not express any concern that Ed was a danger to others or violating any laws.  There is nothing in the 911 call to justify the immediate aggression, both verbal and physical, shown by the Officers upon their arrival.

26.     The City failed to properly train the Officers, adopted unconstitutional policies and procedures for how its officers interact with the public and subdue individuals who fail to respond to their requests, and sanctioned unlawful and unconstitutional practices of its officers contrary to law and its own published policies and procedures. Ed had committed no crime and his conduct did not warrant the excessive and deadly assault by the Officers.

27.     The Officers were, or should have been, trained by the City to have knowledge of the symptoms and effects of asphyxiation, how a law enforcement officer should appropriately and timely respond to a case of asphyxiation, and how the failure to immediately treat asphyxiation can cause death.

28.     At all pertinent times, the Officers were employed by the City and acting under color of state law and in the course and scope of their employment with the City.  The City is responsible for the wrongful acts that they committed within the scope of their employment pursuant to respondeat superior. To the extent that the City claims that the Officers' actions are criminal, clearly outside the scope of their employment, malicious, or willful and wanton, Plaintiffs are suing the Officers in their individual capacity.

29.     The assault on Ed was without legal justification and objectively unreasonable under the totality of the circumstances.  Pursuant to 42 U.S.C.A. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, the Defendants owed Ed a duty to act prudently and with reasonable care and to otherwise avoid the use of unnecessary, unreasonable, excessive, and/or deadly force.  The Defendants violated Ed's right to be free from punishment and deprivation of life

and liberty without due process of law and to be free from deliberate indifference to all of those rights by unjustifiably allowing him to die without providing immediate medical treatment.

30.     After employing unnecessary, unreasonable, excessive, and deadly force resulting in injury to Ed, the Defendants failed to timely render and/or seek medical care or assistance for Ed.

31.     The Defendants also conspired to fabricate and disseminate false accounts regarding the use of unnecessary, unlawful, and excessive deadly force against Ed.  The Defendants knowingly, falsely, and publicly stated that the Officers and others were in a dangerous situation and/or were justified in using the type of force they did.  Statements made by the Defendants in the record and/or publicly that represented Ed to be at fault for his own death were voiced and announced prior to completion of a complete and objective investigation.  A complete and objective investigation of the Defendants' actions has never been completed.

32.     At all times relevant, the City, through the EPD and its officers, policymakers, and supervisors, pursued policies, practices, and customs that were a direct and proximate cause of the unlawful and unconstitutional acts alleged here and were the result of deliberate indifference.  The policies include, but are not limited to:

a.      Failing to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers, including the Officers who injured and killed Ed, who are known or should have been known to engage in improper use of excessive and deadly force;

b.      Employing a police code of silence where officers and supervisors cover up the use of excessive force by fabricating accounts in police reports, internal affairs investigations, and statements to the media, all of which are designed to falsely exonerate officers and protect the City from potential civil liability;

c.      Creating and implementing procedures that allow for and promote the use of excessive force in unwarranted and under unjustified circumstances;

d.      Failing to train its police officers concerning the dangers of restraining persons and the dangers of the use of TASER electronic control devices;

e.      Failing to train its police officers concerning the dangers of positional and compression asphyxia;

f.      Failing to adequately investigate in-custody civilian deaths and failing to discipline officers involved;

g.      Failing to properly use, maintain, and monitor police body and dashboard video and audio recording equipment; and

h.      Other failures yet to be discovered.

33.     At all times relevant, the individual Defendants were acting and/or interacting with Ed within the scope of their employment as employees and/or agents of the City.  At all times relevant, as a result of the Indiana Constitution and/or statutes and/or common law and/or the special relationship that existed between Ed and the Defendants, Defendants had a duty to provide adequate medical care and/or treatment to Ed and to act with ordinary care for his safety.

34.     Defendants breached their duty and acted with recklessness, willfulness, and wantonness and with deliberate indifference as to whether harm would result by assaulting and battering Ed with their hands, fists, and feet, and by tasering him unnecessarily and by keeping him in a position that would asphyxiate him. In addition to the mentioned actions and/or omissions, the Defendants acted in an extreme and outrageous manner with reckless disregard as to whether injury would result.  The acts and/or omissions and/or conduct of the Defendants as alleged in the above-

stated causes of action constitute gross negligence and/or battery and/or intentional infliction of emotional distress under the laws of Indiana.

35.     As a direct and proximate result of the Defendants' actions, omissions, and deliberate indifference, Ed suffered severe physical pain, injury, emotional distress, mental anguish, untimely and wrongful death, and other damages and injuries resulting in his death.

36.     But for the aforementioned conduct of the Defendants, Ed would not have suffered severe pain and suffering or lost his life on September 13, 2019.

## COUNT I

## VIOLATION OF FOURTH AMENDMENT RIGHTS, 42 U.S.C. § 1983

37.     Plaintiffs adopt and incorporate by reference paragraphs 1 through 36 above as if fully set forth herein.

38.     The conduct by the Officers constituted excessive and deadly force in violation of the Fourth and Fourteenth Amendments of the United States Constitution and clearly established law.

39.     It was a violation of Ed's Fourth Amendment rights for the Officers to fail to render medical aid to Ed once he became unresponsive.

40.     The Officers were each acting under color of state law, as agents of the EPD and the City, and within the scope of their employment and authority as duly-certified law enforcement officers of the City.

41.     Taylor was acting in a supervisory capacity as a Field Training Officer and directly participated in violating Ed's rights. Taylor is therefore liable in both his individual and supervisory capacities.

42.     At all material times, the Officers had no reason to believe that Ed was armed or dangerous.

43.     At all material times, the Officers did not have a reasonable fear of imminent bodily harm nor a reasonable belief that any other person was in danger of imminent bodily harm from Ed.

44.     Every reasonable law enforcement officer would have known that using excessive force against a person who had committed no crime, was not armed, nor a danger to himself or others is a violation of every citizen's rights under the Fourth Amendment.

45.     In addition to the Officers' unjustified, excessive, illegal, and deadly uses of force, each of the Officers had a duty to intervene on behalf of a citizen whose constitutional rights were being violated in their presence by another officer.

46.     The Officers' conduct was objectively unreasonable and violated clearly established law.

47.     As a result of the Officers's conduct, Ed experienced conscious pain and suffering.

48.     As a result of the Officers's conduct Ed died.

49.     As a result of each Officer's unjustified failure to intervene in the excessive use of force, Ed suffered pain and emotial distress and died.

50.     As a direct and proximate result of the acts and omissions described herein, Plaintiffs are entitled to damages in an amount to be determined by jury.

51.     Punitive damages are available against the Officers and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof of any state law.

52.     Plaintiffs are entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT II

## MONELL LIABILITY, 42 U.S.C. § 1983

53.    Plaintiffs adopt and incorporate by reference paragraphs 1 through 52 above as if fully set forth herein.

54.    The City is vested with all the powers connected with and incident to the establishment, maintenance, appointment, removal, discipline, control, and supervision of its police force.

55.    The City has final policymaking authority with regard to establishing written policies and training programs governing the conduct of EPD officers performing policing functions on behalf of the City.

56.    The City established and/or approved EPD's written policies and training governing the conduct of EPD officers performing policing functions.

57.    The written policies and training established and/or approved by the City  constitute the official policy of the City and were the moving force behind and caused Ed's injuries.

58.    The City had knowledge of EPD's unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens' federal rights.

59.    The City made a deliberate and/or conscious decision to disregard the known risk of harm that would result from EPD's unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same.

60.    On or prior to September 13, 2019, the City, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety of arrestees, detainees, and the like during arrest, including but not limited to the handcuffing and restraint process.

13

61.    On or prior to September 13, 2019, the City, with deliberate indifference to the
rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted,
or ratified a number of customs, patterns, or practices that condoned and required officers
to turn a blind eye to and not intervene with the use of excessive force by EPD officers.

62.    On or prior to September 13, 2019, the City, with deliberate indifference to the
rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted,
or ratified a number of customs, patterns, or practices that shall be further identified in
discovery.

63.    By refusing to adopt and enforce policies that deter the use of excessive force and
provide for meaningful investigations of complaints of excessive force, the City created an
environment that allowed the Officers to believe that they could act with impunity and without fear of
retribution.

64.    In this case, the EPD conducted its own investigation of the excessive force and
wrongful death, no outside agency was involved in the investigation, and to the best knowledge of the
Plaintiffs, the Officers were not disciplined.  The failure to properly investigate such claims is part of
a larger custom, policy, or practice of failing to supervise, terminate, or properly discipline the City's
officers for unconstitutional, unlawful, or otherwise improper conduct, thereby encouraging other
officers to continue to engage in unlawful acts towards the public.

65.    On or prior to September 13, 2019, the City, with deliberate indifference to the
rights of arrestees, detainees, and the like, participated in contract negotiations with the
union for police officers that among other things, allows police officers to have up to three (3) days
before they are required to make statements to investigators, during which time the officers are
allowed to speak with legal counsel and prepare written statements of the circumstances of the

investigation, and allow the officer being investigated to refer to his or her written statements during the investigative interview.

66.     As a direct and proximate result of the acts and omissions described herein, Plaintiffs are entitled to recover damages in an amount to be determined by a jury.

67.     Punitive damages are available against the Officers and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof of any state law.

68.     Plaintiffs are entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT III

## CANTON LIABILITY, 42 U.S.C. § 1983

69.     Plaintiffs adopt and incorporate by reference paragraphs 1 through 68 above as if fully set forth herein.

70.     The City failed to properly train or modify its training to its officers, including but not limited to, matters related to the reasonable and appropriate use of force during investigations, detentions, and arrests, and intervention in the excessive use of force by fellow officers.

71.     The use of force is a usual and recurring situation with which the City's law enforcement officers and other agents encounter on a regular basis.

72.     With deliberate indifference to the rights of citizens, the City failed to provide adequate training to its officers on the use of force, resulting in the personal injury to and death of Ed.

73.     The City was aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training and the failure to modify its training.

74.     As such, the City was deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

75.     The failure to train and/or to appropriately modify training constituted official policies, practices, or customs.

76.     The City's failure to train and/or to modify its training was a proximate cause of the acts and omissions the Officers made toward Ed.

77.     As a direct and proximate result of the acts and omissions described herein, Plaintiffs are entitled to damages in an amount to be determined by jury.

78.     Punitive damages are available against the Officers and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof of any state law.

79.     Plaintiffs are entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT IV
## COMMON LAW NEGLIGENCE

80.     Plaintiffs incorporate by reference paragraphs 1 through 79 as if fully set forth herein.

81.     At all times relevant to this case, the Officers acted within the scope of their duties as employees of the EPD and the City.

82.     The Officers owed Ed a duty to exercise reasonable care.

83.     The Officers breached their duty of care to Ed.

84.     The Officers' breach of duty was not excused by law.

85.     As a proximate cause of the Officers' acts and omissions, Ed sustained serious bodily injury and endured great pain, suffering, mental anguish, and emotional distress from the time the Officers arrived on the scene until his death.

## COUNT V

## COMMON LAW ASSAULT AND BATTERY

86.    Plaintiffs incorporate by reference paragraphs 1 through 85 above as if fully set forth herein.

87.    The Officers deliberately assaulted and battered Ed by grabbing, tasering, pursuing, striking, and asphyxiating him causing Ed great physical harm, pain, and suffering.

88.    As a proximate cause of these acts and omissions, Ed sustained serious bodily injury and endured great pain, suffering, mental anguish, and emotional distress from the time the Officers arrived on the scene until his death.

## COUNT VI

## COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

89.    Plaintiffs incorporate by reference paragraphs 1 through 88 above as if fully set forth herein.

90.    The Officers, in approaching and pursuing Ed without cause or provocation, intentionally or recklessly caused Ed to suffer severe emotional distress.

91.    The Officers knew or should have known that pursuing Ed would cause him to fear for his physical safety and life.

92.    With each assault and action until the point when he succumbed to his injuries, Ed was in imminent fear for his life.

93.    As a proximate cause of the Defendants' intentional acts and omissions, Ed suffered severe emotional distress during his encounter with the Officers, throughout the Officers' pursuit, and until Ed died from his wounds.

## COUNT VII

## COMMON LAW NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

94.     Plaintiffs adopt and incorporate by reference paragraphs 1 through 93 above as if fully set forth herein.

95.     The Officers had a duty to exercise reasonable care toward Ed.

96.     The Officers breached that duty by approaching and pursuing Ed without justification, causing him to fear for his life.

97.     Having suffered multiple physical wounds, Ed experienced severe emotional distress from the knowledge that he could die.

98.     Defendants' negligent conduct directly and proximately caused Ed to suffer severe emotional distress during his encounter with the Officers, throughout the Officers' pursuit, and until Ed died from his wounds.

## COUNT VIII

## COMMON LAW NEGLIGENCE IN SUPERVISING AND RETAINING

99.     Plaintiffs incorporate by reference paragraphs 1 through 98 as if fully set forth herein.

100.    At all times relevant to this case, the Officers acted within the scope of their duties as employees of the EPD and the City.

101.    The City had a duty to properly hire, train, supervise, discipline, and—where necessary— terminate its personnel in order to protect the public against dangers reasonably likely to result from the absence of proper hiring, supervision, and firing.

102.    Upon information and belief, Koontz was under the command of Taylor during the assault.

103.    Taylor had a duty to properly supervise and control Koontz to protect the public against dangers reasonably likely to result from the absence of proper supervision and control.

104.    The City breached its duties to the public—including Ed—by failing to adequately hire, supervise, control, discipline, or terminate its officers, including Taylor and Koontz.

105.    Defendants' breach of these duties directly and proximately caused Ed's injuries and death.

## COUNT IX

## COMMON LAW NEGLIGENCE IN TRAINING

106.    Plaintiffs incorporate by reference paragraphs 1 through 105 as if fully set forth herein.

107.    At all times relevant to this case, the Officers and each of them acted within the scope of their duties as employees of the EPD and the City.

108.    Upon information and belief, the Officers participated in standard job training given by the EPD and each of the Officers was subject to all laws, regulations, and rules governing the conduct of officers employed by the City.

109.    The City had a duty to use reasonable care in training EPD officers, including but not limited to training, education, evaluation, and corrective action against officers in line with governing federal and local laws and regulations.

110.    The City knew or should have known that its officers commonly used excessive force when interacting with the public, but the City failed to adequately train, educate, evaluate, and take corrective action against its officers, thereby breaching the City's duty.

111.    The City further breached its duty of care to Ed by failing to use reasonable care in providing training consistent with local and national standards.

112.    Defendants' breach of these duties directly and proximately caused Ed's injuries and ultimate death.

## COUNT X

## RESPONDEAT SUPERIOR

113.    Plaintiffs adopt and incorporate by reference paragraphs 1 through 112 above as if fully set forth herein.

114.    The City is liable for all common law torts its employees commit in the scope of their employment under the doctrine of respondeat superior.

115.    At all times discussed in and relevant to this complaint, the Officers were employees of EPD and the City.

116.    At all times discussed in and relevant to this complaint, the Officers acted within the scope of their employment by EPD and the City.

117.    Where any Defendant Officer is found liable to the Plaintiffs, the City is also liable to the Plaintiffs under the doctrine of respondeat superior for those injuries.

## COUNT XI

## WRONGFUL DEATH

118.    Plaintiffs incorporate by reference paragraphs 1 through 117 above as if fully set forth herein.

119.    Plaintiffs bring this claim for wrongful death pursuant to Ind. Code 34-23-1-2.

120.    Plaintiffs' claims for common law negligence and assault and battery are actionable under the Indiana wrongful death statute.

121.    Ed was wrongfully injured and killed by the Officers.

122.    The Officers breached their duty to immediately provide life savings measures for Ed once he became unresponsive.

123.    As a direct result of the wrongful acts committed by the Officers and the City, the Estate is entitled to recover damages pursuant to Ind. Code 34-23-1-2.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

A.    A money judgment against the Defendants for compensatory, special, and punitive damages, together with costs and disbursements, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest.

B.    A money judgment against the Defendants for damages recoverable under IC 34-23-1-2.

C.    For the appointment of a receiver or similar authority to ensure that the City properly trains and supervises its law enforcement officers.

D.    For such other and further relief as this Court deems just and equitable.

### **PLAINTIFFS DEMAND A JURY TRIAL.**

Respectfully submitted,


Date:  September 1, 2021                         /s/Mark E. Miller
                                                Mark E. Miller
                                                Attorney No. 10458-82
                                                Mark Miller Law Office
                                                915 Main Streete – Suite 203
                                                P.O. Box 3009
                                                Evansville, IN  47730
                                                mmiller@indianalawonline.com
                                                Phone: (812) 303-3444
                                                Attorney for Plaintiffs