UNITED STATES DISTRICT COURT
Southern District of Indiana

| | |
|---|---|
| EDWARD C. SNUKIS, JR. and<br>SAMANTHA SNUKIS,<br>Co-Administrators of the Estate of<br>Edward C. Snukis<br><br>　　　　　Plaintiffs<br><br>　vs.<br><br>CITY OF EVANSVILLE, INDIANA;<br>MATTHEW O. TAYLOR, in his individual<br>capacity as an Evansville police officer;<br>TREVOR KOONTZ, in his individual<br>capacity as an Evansville police officer; and<br>NICHOLAS HACKWORTH, in his<br>individual capacity as an Evansville police officer | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE NO. 3:21−cv−00135−TWP−MPB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Comes now the Plaintiffs, by counsel, and submit their Response to the Defendants' Motion to Dismiss (Dkt. 34).

**I.**

**INTRODUCTION**

On September 13, 2019, at approximately 7:44 PM, a 911 call was placed by an employee of D-Patrick Honda located at 4300 E. Division St., Evansville, Indiana. The 911 caller indicated that a person, Edward Snukis ("Ed"), was "hanging around" and "appears to be impaired." The 911 caller indicated that Ed was standing out by the D-Patrick Collision center sign at Indiana and Congress near the road and that the caller was "afraid that he [Ed] is going to get hit." The 911 caller did not indicate that Ed was violent, armed, or had committed any crime.

1

The EPD Event Report states that the first dispatch was issued at approximately 7:49 PM. The Report says that Ed was an "intoxicated person," and the priority for the call was described as "Priority 4," a service call for "Situations requiring a routine response in which there is no urgency involved. (Public Intoxication, Standby, General Complaints, etc.)." The expected response time for a Priority 4 service call is "within 1 hour." Based upon the information available at the time, there was no reason to believe that Ed had committed any crime or was a danger to himself or others.

Officers Matt Taylor ("Taylor") and Trevor Koontz ("Koontz") arrived at 7:52 PM. Ed was not injured, combative, or in a restricted area. However, immediately upon arriving and without any cause, notice, or warning, Koontz aggressively approached Ed and repeatedly demanded that Ed "put [his] hands on [his] head."

Without speaking to Ed, Koontz grabbed Ed's arm. Ed asked, "Why? What's going on?" Koontz never answered those questions. By grabbing Ed's arm, Koontz was using force before it was justified or reasonable. Koontz and Taylor began yelling at Ed in a manner that would cause fear and distress in any reasonable person. Throughout the ordeal, neither Koontz nor Taylor asked Ed to identify himself or explained to Ed who they were or why they were there.

As Ed pulled away from Koontz, Ed fell to the ground striking his head. Ed was tasered multiple times. Ed tried to stand up and he was tasered again. Koontz and Taylor continued yelling at Ed. In a clear state of fear, Ed got to his feet and ran away from Koontz and Taylor. Koontz and Taylor gave chase and eventually caught up with Ed. Ed fell face down on the ground, and Taylor and Koontz jumped on Ed and held him down. While on the ground unarmed and defenseless, Ed was assaulted and beaten by Koontz and Taylor. Officer Nicholas

2

Hackworth ("Hackworth") arrived on the scene and participated in the assault by assisting with restraining and handcuffing Ed.

Taylor, Koontz, and Hackworth (the "Officers") forced Ed to remain prone on the ground with his head, face, and mouth in the dirt as they tried to handcuff his hands behind his back. At the same time, the Officers used excessive force by exerting physical pressure with their hands, arms, and legs on Ed's head, neck, shoulders, chest, and back. Even as Ed's speech became slurred and then silent and his breathing became difficult and then stopped, the Officers continued to assault and forcibly restrain Ed as he lay face down and lifeless on the ground.

Once Ed was subdued, the Officers knew or should have known that Ed was unresponsive and had stopped breathing. The Officers had a duty to properly monitor Ed's breathing and pulse. The Officers had the legal authority and duty once Ed was in their custody to provide him with immediate medical care and request emergency medical assistance. Instead, the Officers left Ed handcuffed face down on the ground for several minutes without any medical care or assistance.

The Officers failed to recognize that Ed was breathing in an abnormal fashion and was engaged in agonal breathing indicating that he was suffering from a medical emergency and was nearing death requiring the Officers to cease assaulting him, provide immediate medical aid, and immediately summon emergency medical services for him. The Officers failed to do this. and, because of the assault and failure to render medical assistance, Ed died.

# II.

## STANDARD OF REVIEW

A complaint should include a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to provide the defendant with fair notice of the claim and its basis. Fed.R.Civ.P. 8(a)(2). The complaint should be construed in "the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citations omitted).

> A complaint need not "allege all, or *any*, of the facts logically entailed by the claim," and it certainly need not include evidence. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (quoting *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986)); *see also Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006) ("Federal complaints plead *claims* rather than facts."). Indeed, "[l]itigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's *proof* leads to windy complaints and defeats the function of [Federal Rule of Civil Procedure] Rule 8." *Bennett*, 153 F.3d at 519.

*Tamayo, supra,* 526 F.3d at 1081 (7th Cir. 2008); see also *Williams v. Dart*, 967 F.3d 625, 638-39 (7th Cir. 2020) ("[l]itigants are entitled to discovery before being put to their proof." *Bennett*, 153 F.3d at 519. *Iqbal* is not a mandate to weigh a plaintiff's likelihood of ultimate success at the pleading stage.").

The Seventh Circuit has also ruled that a plaintiff need only "state a "plausible" claim, a plaintiff need not include every detail or fact related to the basis of her allegations. Rather, she only needs to include "enough details about the subject-matter of the case to present a story that holds together." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (citations omitted).

# III.

# ARGUMENT

**A. The Officers are not entitled to qualified immunity on Plaintiffs' claim in Count I alleging that the Officers violated the Fourth Amendment by "fail[ing] to render medical aid," as the duty to render medical aid was a clearly established right at the time of the alleged actions by the Officers, on September 13, 2019.**

The Officers assert that they are entitled to qualified immunity on the allegations in Count I of the Complaint that the Officers breached their duty to render medical aid.[1] The Officers argue that an arrestee's Fourth Amendment right to medical care "was not a clearly established right on September 13, 2019." This is an incorrect and incomplete statement of the law.

The Seventh Circuit has ruled that, "Because a qualified immunity defense so closely depends 'on the facts of the case,' a 'complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds.' … In short, "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion ... subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Reed v. Palmer*, *supra,* 906 F.3d at 548-549 (7th Cir. 2018).

The Seventh Circuit Court of Appeals has stated in 2017 that, "by 2010, it was clearly established that an officer or prison nurse's actions were judged by the objectively reasonable standard of the Fourth Amendment, the failure to take *any* action in light of a serious medical need would violate that standard." *Estate of Perry v. Wenzel*, 872 F.3d 439, 460 (7th Cir. 2017).

> So, if a plaintiff "offers evidence that allows the jury to infer that a delay in treatment harmed an inmate, there is enough causation evidence to reach trial." *Gayton*, 593 F.3d at 624-25. This is true here, where the jury could infer that although Perry ultimately died of a heart condition, it was the delay in providing *any* treatment that caused the harm, i.e.,

---

[1] Officers Taylor and Koontz did not challenge the other claims set forth in Count I, including use of excessive force and failure to intervene. Officer Hackworth has moved to dismiss those claims against him. See discussion in Section III.B below.

his death on the floor of the CJF. Therefore, we reject the City's argument that there is insufficient evidence of causation to survive its motion for summary judgment.

*Estate of Perry v. Wenzel*, *supra,* 872 F.3d at 459 (7th Cir. 2017)

The Officers rely primarily upon the case of *Royal v. Norris*, 776 F. App'x 354, 358 (7th Cir. 2019). The *Royal* case was also determined by the trial court on a motion for summary judgment.

The trial court determined that the officers involved were not entitled to qualified immunity and denied the officers' motion for summary judgment. The 7th Circuit Court of Appeals reversed.

> Immediately after being put on notice that Royal might have ingested cocaine, the officers repeatedly asked him whether he had swallowed any, asked how he felt, explained the danger of eating cocaine, and assured him that he would not face additional criminal penalties for telling them if he had. Even though Royal (at several stages) lucidly and unequivocally denied swallowing any cocaine, the officers, in an abundance of caution, asked paramedics to independently evaluate him. The paramedics examined him and determined that he did not need medical care.

*Royal v. Norris*, *supra,* 776 F. App'x at 355-59 (7th Cir. 2019)

In the present case, the allegations of the Complaint and reasonable inferences therefrom show the following:

> The Officers forced Ed to remain prone on the ground with his head, face, and mouth in the dirt as they tried to handcuff his hands behind his back. At the same time, the Officers used excessive force by exerting physical pressure with their hands, arms, and legs on Ed's head, neck, shoulders, chest, and back. Even as Ed's speech became slurred and then silent and his breathing became difficult and then stopped, the Officers continued to assault and forcibly restrain Ed as he lay face down and lifeless on the ground. The Officers failed to properly monitor Ed's breathing and pulse. Once Ed was subdued, Ed was unresponsive and had stopped breathing. The Officers left Ed handcuffed face down on the ground for several minutes without any medical care or assistance. The Officers failed to recognize that Ed had been breathing in an abnormal fashion and had engaged in agonal breathing indicating that he was suffering from a medical emergency and was nearing death requiring the Officers to cease assaulting him, provide immediate medical aid, and immediately summon emergency medical services for him.

The Plaintiffs have clearly alleged "the failure to take *any* action in light of a serious medical need" and the Motion to Dismiss the allegations in Count I relating to failure to render medical assistance should be denied.

**B. Count I alleges that Officer Hackworth caused or participated in the alleged constitutional violation.**

Officer Hackworth contends that Count I of the Complaint fails to state any cause of action against him. Officer Hackworth contends that Plaintiffs do not allege any use of force by Officer Hackworth that was unreasonable.

The Complaint defined the term, "Officers" to include Officer Hackworth. See Complaint ¶ 7. Therefore, the allegations of the Complaint that reference the "Officers" include Officer Hackworth.

The pertinent factual allegations are set forth in paragraphs 18 through 31 of the Complaint. The allegations of use of force by Officer Hackworth can be summarized as follows:

> The Officers forced Ed to remain prone on the ground with his head, face, and mouth in the dirt as they tried to handcuff his hands behind his back. At the same time, the Officers used excessive force by exerting physical pressure with their hands, arms, and legs on Ed's head, neck, shoulders, chest, and back. Even as Ed's speech became slurred and then silent and his breathing became difficult and then stopped, the Officers continued to assault and forcibly restrain Ed as he lay face down and lifeless on the ground.

See also Section I of this Response.

The allegations of the Complaint and reasonable inferences therefrom show that Count I sufficiently alleges an unconstitutional use of force and failure to intervene that put Officer Hackworth on notice of the claims asserted against him.

**C. Counts II and III allege plausible *Monell* and *Canton* claims against the City.**

The City argues that Count II of the Complaint fails to allege a plausible *Monell* claim. The City also argues that Count III fails to allege a plausible *Canton* claim.

In addition to the allegations of the Complaint summarized in the Introduction to this Response as well the facts summarized in Section II.B, supra, the Plaintiffs have alleged the following (notations are to specific paragraphs of the Complaint):

> 23.i. The City failed to train their officers and/or have sufficient policies on the core tasks of investigative detentions, searches, reasonable suspicion, probable cause, arrests, **use of force**, **crisis intervention**, **duty to intervene**, **agonal breathing**, **medical distress**, and providing/summoning emergency medical services, to prevent illegal detentions, excessive force, and the deaths of persons who are in the custody of their officers.
>
> 27. The Officers were, or should have been, trained by the City to have knowledge of **the symptoms and effects of asphyxiation**, **how a law enforcement officer should appropriately and timely respond to a case of asphyxiation, and how the failure to immediately treat asphyxiation can cause death.**
>
> 32. At all times relevant, the City, through the EPD and its officers, policymakers, and supervisors, pursued policies, practices, and customs that were a direct and proximate cause of the unlawful and unconstitutional acts alleged here and were the result of deliberate indifference. The policies include, but are not limited to:
>
>> b. Employing a **police code of silence** where officers and supervisors cover up the use of excessive force by fabricating accounts in police reports, internal affairs investigations, and statements to the media, all of which are designed to falsely exonerate officers and protect the City from potential civil liability;
>>
>> d. Failing to train its police officers concerning the **dangers of restraining persons and the dangers of the use of TASER electronic control devices**;
>>
>> e. Failing to train its police officers concerning the **dangers of positional and compression asphyxia**

Although broad, these are not boilerplate allegations referencing all police policies. Instead, they are allegations identifying the lack of specific policies and training that relate to the

allegations of the Complaint and establish a direct causal connection between the policy or practice and Ed's injuries and death.

For example, injuries from improper use of force and failure to render medical assistance are clearly foreseeable and such injuries are precisely the reason why those policies and training exist. In *East v. Chicago*, 719 F. Supp. 683, 693-94 (N.D. Ill. 1989), the Court found that an allegation of a lack of adequate training and policies related to use of force was sufficient to proceed on a *Monell* claim.

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. **Perrijean meets that standard in charging City with a failure to train its officers in the use of force. Because the appropriate use of force is a problem regularly encountered in police work, every officer must be trained to know when and how much force to use in the variety of taxing situations he or she is likely to face. Surely the need to provide such training is "'so obvious' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights**."

*East v. Chicago*, *id.* (emphasis added; citation omitted).

In a more recent case from the Southern District of Indiana, this Court denied a motion for summary judgment on a plaintiff's *Monell* and *Canton* claims. See *Jones v. Millspaugh*, 2021 U.S. Dist. LEXIS 20136, at *18-20 (S.D. Ind. Feb. 3, 2021). This case involved a claim by a pre-trial detainee who argued that the contract operator of the jail failed to promulgate, review, and train jail and medical staff on procedures necessary to provide reasonable medical care to inmates that resulted in the plaintiff suffering physical harm, emotional distress, and mental anguish. *Jones v. Millspaugh*, 2021 U.S. Dist. LEXIS 20136, at *14 (S.D. Ind. Feb. 3, 2021). The Court denied a motion for summary judgment filed by the jail operator and explained the decision:

> In *City of Canton v. Harris*, the United States Supreme Court held that training practices, or lack thereof, may give rise to § 1983 liability. 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). The Court found that "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *Id.* at 387. Where the need for training is obvious, and the absence of training is likely to result in the violation of constitutional rights, a municipal entity may be liable for failure to train its employees. *Id.* at 390; *see also Glisson*, 849 F.3d at 381 (citing *Harris*); *Miranda*, 900 F.3d at 345 (noting *Monell* liability may arise where "the defendant failed to provide adequate training in light of foreseeable consequences" (quotation and citation omitted)). Although the nurses at the Jail were employed by the county, they were supervised by the doctors at CPC. One of the services delineated in the contract was to be on-call to respond to Jail and nurse staff questions about inmates' medical needs, **and a jury could find that the complete absence of training could result in a failure to recognize when an inmate needed medical attention.**
>
> *Jones v. Millspaugh*, 2021 U.S. Dist. LEXIS 20136, at *14 (emphasis added).

The Plaintiffs have sufficiently alleged a "complete absence" of training and policies that foreseeably cause injuries and death such as those caused to Ed in this case. The City's Motion to Dismiss Counts II and III should be denied.

**D. Plaintiffs' state law claims in Counts IV, V, VI, VII, VIII, IX, and XI may be barred by Indiana's Tort Claims Act ("ITCA").**

The Officers argue that a lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally. The Officers concede that, if the governmental entity answers that the employee acted outside the scope of the employee's employment, the plaintiff may sue the employee personally. See. I.C. § 34-13-3-5(b).

The City has not answered the Complaint and has made no commitment that they will assume liability for the Officers' actions. Plaintiffs addressed this contingency in paragraph 28 of the Complaint. If the City does answer and assume liability for the Officers, then the Officers could be dismissed, although the allegations of Counts IV, V, VI, VII, VIII, and IX would then

need to be incorporated into Count X of the Complaint, a respondeat superior claim against the City. The City has not moved to dismiss Count X.

Count XI is a wrongful death claim asserted against the Officers and the City. To the extent the claims are made against the City, Count XI should not be dismissed in any circumstances.

The Plaintiffs request that the Court deny the Motion to Dismiss without prejudice to refile pending the City filing its answer to the Complaint and assuming liability for the Officers' actions.

**E. Plaintiffs' state law claims for negligent supervision, retaining, and training in Counts VIII and IX are barred under the ITCA.**

For the reasons argued by the Defendants, the Plaintiffs do not oppose dismissal of Counts VIII and IX of the Complaint, provided that Plaintiffs are given leave to amend the Complaint if such is warranted.

**F. Plaintiffs fail to sufficiently allege facts that give rise to equitable relief under Section 1983.**

This part of the Defendants' Motion to Dismiss is directed at the Prayer for Relief. Defendants do not cite any authority authorizing a Motion to Dismiss to be used for this purpose. Nevertheless, and for the reasons argued by the Defendants, the Plaintiffs do not oppose dismissal of paragraph C of the Prayer, provided that Plaintiffs are given leave to amend the Complaint if such is warranted.

## IV.

## CONCLUSION

Plaintiffs request that the Court deny the Motion to Dismiss for the reasons and to the extent set forth herein.

Respectfully submitted,

*/s/ Mark E. Miller*
Mark E. Miller, Attorney No. 10458-82
Mark Miller Law Office
915 Main Street – Suite 203
P.O. Box 3009
Evansville, IN 47730
mmiller@indianalawonline.com
Phone: (812) 303-3444

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

By: */s/ Mark E. Miller*
     Mark E. Miller, Attorney No. 10458-82