# OFFICE OF
# Evansville Police Department
## Use of Force Report

### INCIDENT INFORMATION

Date of this Report: 09/13/2019     Date of Incident: 09/13/2019     Time of Incident: 19:52

Location of Incident: 4300 DIVISION ST AUTO PLZ, EVANSVILLE, IN 47711

Case number: 1920309

Type of force (Effective Y/N)

a.) CEW (N)     b.) HARD EMPTY HAND (Y)     c.) SOFT EMPTY HAND (N)

Other (explain):

At the time of the incident, the officer was in   UNIFORM

Name and xray numbers of all officers present at the time the use of force was used:
HACKWORTH, NICHOLAS A (2X1435)

Other witnesses:

### OFFICER INFORMATION

Officer: TAYLOR, M. O.     Xray: 2X1397
Assignment: PAT//PAT/2
Race: W     Sex: M     Date of birth: 06/03/1979
Was the officer injured? Y     Type of injuries: ABRASION
Type of activity: EFFECTING ARREST     Treated at: FIRST AID

## SUBJECT INFORMATION

Name:  EDWARD  SUKIS                                              Address:

Race: W          Sex:  M          Date of birth:

Social security #

Work phone:                                                       Home phone:

Did subject complain of injury?  N                                Were there visible signs of injury?  Y

If yes, type of injuries:     ABRASION
Type of treatment:     HOSPITAL - ST MARYS

Injury location:

Treated by

Time of treatment :
Time of release:

Substance the subject was under at the time of the incident was:
Photos attached? Y        If no, explain:

Was suspect arrested?            If yes, list charges.  If no, explain:

## INCIDENT DESCRIPTION

GARRITY RIGHTS

The Evansville Police Department is requiring that I, a Police Officer for the City of
Evansville, complete a Use of Force Report documenting the circumstances of force that I used
upon a person in the performance of my duties.

I have been advised that if I do not comply with the above request, I will be suspended and/or
disciplined and face possible termination from the Police Department for refusing to obey
orders from a superior officer or for other grounds surrounding my refusal. In view of possible
job forfeiture, I have no alternative but to abide by this order by documenting my actions on
the Use of Force Report. Further, I understand that any statements and evidence gathered
through their use of this report may be used against me in connection with departmental
disciplinary proceedings.

For any and all other purposes, I hereby reserve my constitutional rights to remain silent
under the Fifth and Fourteenth Amendments to the United States Constitution and under the
protection of the Indiana Constitution. Further, I rely specifically upon the protection
afforded me under the doctrines set forth in Garrity v. New Jersey, 385 U.S. 493 (1967), should
this statement be used for any other purpose whatsoever kind of description.

Officer Narrative:

Officers were dispatched to the area of Congress and Indiana for a report of an intoxicated
male in the area.

When Officer Koontz and I arrived in the area, we located a while male subject matching the
description provided by dispatch.  The subject appeared to be under some form of intoxication.
As we exited the vehicle, he approached us in an aggressive manner.

See body camera for interactions with subject. [09/13/2019 22:54, MOTAYLOR, 2x1397, EPD]
********************************************************************************
************

## INCIDENT DESCRIPTION

We were dispatched to N Congress Ave for a call regarding an intoxicated person. As Officer Taylor and I arrived in the area, we immediately saw an individual matching the description of the subject. The subject began aggressively motioning towards our vehicle. When we pulled over and exited the vehicle, the subject approached me yelling and throwing his hands in the air. He approached me in an aggressive way, and I asked him to put his hands on his head. See my body camera footage for the details of the interaction with the subject. [09/13/2019 22:59, TKOONTZ, 2x1471, EPD]

Officer's signature _____   Date: _____

## SUPERVISOR'S RESPONSIBILITIES

I have reviewed this use of force, and have determined that:

[X] It is within the policy guidelines   [ ] It is not within the policy guidelines

[ ] Training and proper tactics were followed   [ ] Training and proper tactics were not followed

Supervisor's name:   BROWN, D. R.                                   Supervisor's Xray::  2X5193

Supervisor's signature: _____

Supervisor's assignment:   PAT/EAST/2R

Supervisors Review:

I arrived on scene and Officer Taylor directed me to witnesses at 201 N. Congress. There I
spoke with Stephanie Clark 812-430-5288 and Brentlee Spurlock 812-461-8861. Stephanie heard a
"ruckus" and when she turned around the officers were on top of him. She said she knew he had
resisted and heard him yelling and could tell he was on something. She did say they didn't have
to use that much force.
Bentlee Spurlock said he saw the bigger cop tackle the male. He did not see the tazing.
Brentlee said one had him in a choke hold and the other had a knee in the males back. He could
hear the officers telling him to stop resisting and to put his hands behind his back. They were
to the east by the entrance gate to the business at 201 N. Congress.
Officer Holden went back to D Patrick, the original caller, and found the witnesses to the
start of the incident. There I spoke with Cyril Fraker 812-484-6395 and Derrick Norton
812-453-8083/812-262-5161. They said the male was not acting right and had entered a gated area
that is for employees only. He had entered into the detail and body shop and they escorted him
out. He kept stumbling into traffic and that is when they called. When the officers arrived,
they said he placed the box of food down that he had been carrying and walked toward them. It

Continued on Additional Page

Staff Review:    I CONCUR [ ]         I DO NOT CONCUR (EXPLANATION ATTACHED) [ ]

Name:                                                          Supervisor's Xray:

Signature _____

Supervisor's Conclusions:                                                                                                      Continued from page #3
was pretty aggressive and moving faster. He began fighting with them while they were trying to
get him under control. He was then tazed and went to the ground. He kept moving around and
pulling the wires. The officers told him to stop and stay on the ground. He was tazed a second
time but jumped up and ran north. They lost sight of them then.
I watched the video from both Taylor and Koontz. They fight with him after they get out of
the car. Koontz went hands on first and the male begins turning into him. The offender pulls
away and the CEW is used. The offender goes to his knees then starts rolling and pulling at the
wires. Officers are giving verbal commands and he is also told he will be tazed again. The CEW
is used a second time and the offender jumps up and runs north and they chase. The offender
falls in the parking lot of 201 N. Congress. Officer Taylor gets on his upper body and Koontz
is on the offenders legs. Due to the position of both officers nothing is seen until they have
the offenders arms behind his back and is being placed in cuffs. During that time officers
continue to give verbal commands to stop resisting and to put his hands behind his back.
At the beginning, while they are on the ground, you can hear the suspect yelling and most
is inaudible. The longer it goes you can hear him begin to grunt instead of trying to talk.
Once he is cuffed he is rolled over they realize he is unresponsive. They check for a
pulse and find one. He is rolled to his side and kept under observation. Sgt. McQuay arrives
and checks again and could not find a pulse. He is taken out of cuffs and they begin CPR. AMR
had already been called for. Officer Hackworth tells dispatch to start EFD. They continue to do
CPR and provide other medical assistance even once AMR and EFD arrive.
There had been several runs on the male during the night but was never located. Going
hands on to control his movements was acceptable. His demeanor was aggressive and began to
resist and fight immediately. The use of the CEW was acceptable and within guidelines. The male
stumbled and fell to the ground and that is when they reengaged him physically continuing to
give verbal commands. Once in cuffs they began observation and called for medical assistance
and once needed they rendered CPR .
Officer Taylor said the offender`s arm was underneath the offender at an awkward position.
When he described it, it could be seen from a distance as being in a choke hold.
What I see and from witness statements everything was within guidelines.