BEFORE THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

EDWARD C. SNUKIS, JR. and
SAMANTHA SNUKIS,
Co-Administrators of the Estate of
Edward C. Snukis,

    *Plaintiffs,*

v.                          CASE NO. 3:21-cv-00135-MPB-MJD

CITY OF EVANSVILLE, INDIANA;
MATTHEW O. TAYLOR, in his individual
capacity as an Evansville police officer;
TREVOR KOONTZ, in his individual
capacity as an Evansville police officer; and
NICHOLAS HACKWORTH, in his
individual capacity as an Evansville police officer,

    *Defendants.*

---

## AFFIDAVIT OF CYRIL H. WECHT, M.D., J.D.

---

I, Cyril H. Wecht, M.D., J.D., being first duly sworn under oath depose and state as follows:

1. I am a forensic pathologist and attorney in the State of Pennsylvania.

2. I have personal knowledge of the matters set forth in this affidavit.

3. I am over 18 years of age and competent to submit this affidavit and testify under oath in this matter.

4. All of the opinions expressed herein are based upon my knowledge, training, education, and experience and are set forth to a reasonable degree of medical certainty unless

stated otherwise. All of my opinions are based on the materials provided for my review as described below.

5. I have reviewed the following materials provided to me in the matter referenced above:

    a. Autopsy Report of Christopher J. Kiefer

    b. Autopsy Report of Cyril H. Wecht

    c. Autopsy Photographs

    d. Ascension St. Vincent Evansville Medical Records

    e. Death Certificate

    f. American Medical Response (AMR) Records

    g. Evansville Fire Department Records

    h. Complaint

    i. Evansville Police Department Records

    j. Body and Dash Camera Footage from officers Taylor, Koontz, and Hackworth

    k. Deposition of Matthew Taylor

    l. Deposition of Nicholas Hackworth

    m. Order on Defendants' Motion to Dismiss

    n. Report of Robert R. Pusins

    o. Oral Deposition of Matthew C. Sophy, D.O.

    p. Kieffer depo from supplemental report

2. On September 13, 2019, Edward Snukis presented to the Emergency Department at St. Vincent's Hospital at about 8:27 PM in full cardiopulmonary arrest. He had gone into cardiac arrest en route to the hospital. Time of death was declared at 8:51 PM.

3. Christopher J. Kiefer, M.D., Forensic Pathologist, performed a postmortem examination of Edward Snukis on September 14, 2019, which concluded that the Cause of death was methamphetamine intoxication with a contribution by cardiomegaly.

4. I performed a second autopsy of Edward Snukis on September 22, 2019, pursuant to the request of the legal next of kin, which revealed the following:

    A. Final Pathological Diagnoses:

        I. Positional-compression asphyxiation.

        II. Epidural hemorrhage, TI1-TI2.

        III. Subperiosteal hemorrhage of mastoid regions.

        IV. Death while in police custody:

            a. History of becoming unresponsive while being placed in restraints shortly after receiving electrical shocks from conducted electrical weapons.

            b. Conducted electrical weapon barbs embedded in the outer right upper arm and right elbow.

        V. Abrasions and contusions of scalp, multiple, principally right-sided.

        VI. Contusion of superior half of left ear with subscalpular, subgaleal, and subperiosteal hemorrhages, principally left side.

        VII. Contusions of left cheek and chin.

VIII. Contusions of arms and dorsal surface of left hand.

IX. Contusions of mid-abdomen, two.

X. Contusions of scrotal sac with hemorrhage of left epididymis.

XI. Contusions of feet, bilateral, left greater than right.

XII. Lacerations and contusions with superficial intramuscular hemorrhage of left tongue.

XIII. Acute pulmonary congestion.

XIV. Acute methamphetamine intoxication.

XV. Cardiomegaly (heart weight 780 grams).

    a. Marked left ventricular hypertrophy (2.2 cm).

    b. Right ventricular hypertrophy (0.8 cm).

XVI. Marked pulmonary edema.

B. Multiple areas of abrasion and contusion were seen on the scalp which was completely bald. Small areas of injury were seen slightly to the right of the midline in the right anterior parietal region. A larger cluster of abrasions and contusions were noted on the right side in the mid-parietal area into the occipital region. Some abrasions and contusions were also seen in the left occipital region.

C. There was marked discoloration of the superior half of the right ear with diffuse hemorrhage throughout the tissues. However, the cartilaginous components appeared to be intact. An area of contusion was seen in the lateral midportion of the left cheek. An area of contusion was seen on the chin extending in somewhat horizontal fashion from one side to the other. These can be visualized even through the beard growth.

D. There was an area of ecchymosis noted in the left antecubital fossa. Incision into the ecchymotic area in the left antecubital fossa revealed acute hemorrhage in the underlying soft tissues. There was a brownish-red ecchymotic area on the dorsal surface of the left hand. Two areas of abrasion were seen slightly to the left of the midline above the umbilicus. There was hemorrhagic discoloration of the scrotal sac, more marked on the left side. An area of abraded contusion was seen on the anterior aspect of the distal right thigh above knee level. An area of faint bluish contusion was seen overlying the left knee region. Diffuse contusion was noted on the medial aspect of the left foot, extending from the heel to the left great toe. An area of dark contusion was seen on the medial aspect of the right foot beginning proximal to the great toe and extending onto the medial aspect of the great toe.

E. The incision of the right arm was opened, revealing hemorrhage overlying the elbow region. The incision of the left arm was opened, revealing hemorrhage subjacent to the hemorrhage noted in the left antecubital fossa. The incision of the back was opened and revealed extensive hemorrhage in the upper posterior thoracic region extending from the base of the neck, through the suprascapular region, into the midportion of the scapular area extending to the medial regions of the scapulae.

F. The V-shaped thoracoabdominal incision was opened, revealing hemorrhage in the intercostal regions extending from the first through tenth interspace on both sides laterally and posteriorly. Hemorrhage in the intercostal muscles was seen to extend from the costovertebral regions laterally and swept around through the lateral margins onto the anterior aspects of the intercostal musculature. This was quite extensive and involved the entire thoracic cavity. There appeared to be a transverse

fracture through the midportion of the body of the sternum. There were fractures of the rib cage anteriorly at the costochondral junctions involving ribs 3-6 and on the left side involving ribs 3-5. Hemorrhage was seen in the overlying and surrounding soft tissues of all the fractures. Hemorrhage was noted throughout the soft tissues of the entire thoracic region laterally and posteriorly. Hemorrhage was seen in the underlying soft tissues including the musculature of the lower abdomen extending into the pelvic region, extending from one side to the other. The area of hemorrhagic contusion of the scrotal sac was incised.

    G.     Hemorrhage was seen involving the epididymis on the left side.

    H.     The cranial incision was opened, revealing diffuse subscalpular, subgaleal, and subperiosteal hemorrhage, principally on the left side, extending from the auricular area through the mid-posterior portion of the parietal zone into the occipital area. This appeared to be related to the marked contusion noted involving the superior half of the left ear. When the calvarium was removed, hemorrhage was seen in the subperiosteal regions of both mastoid areas. The mastoid processes were dissected and revealed hemorrhage throughout.

    I.     Lung tissues showed diffuse congestion with no evidence of emphysema or pneumonia.

    J.     The vertebral column was opened and removed, revealing no hemorrhage except for a small amount of epidural hemorrhage noted slightly to the left of the midline in the area of T11-T12. This hemorrhage was seen to extend posteriorly and reached the right side.

5. A detailed review of the written report by Robert R. Pusins is completely supportive of my analysis and opinions.

6. I reviewed the deposition of Christopher J. Kiefer, M.D., the pathologist who performed the original autopsy.

7. Following my review of the additional materials provided, the following are my opinions, expressed with a reasonable degree of medical certainty.

   A. Mr. Snukis died suddenly while restrained by and in the custody of the Evansville Police Department in Evansville, Indiana.

   B. Mr. Snukis' proximate cause of the death was determined to be positional compression asphyxiation. This cause of death is supported by the detailed review and written report by Robert R. Pusins.

   C. The proximate, or underlying cause of death, is an event or injury, or disease process without which death would not have occurred, and which begins the chain of events that led to death.

   D. Mr. Snukis being struck on the left side of his head 6 times with a closed fist is relevant information. It shows how the decedent was treated by the police officers leading up to his death. This information was withheld from Dr. Kieffer.

   E. Failure to disclose relevant and significant information is detrimental to an autopsy examination and can affect the determination of the proximate cause and manner of death of a person.

   F. Information regarding the multiple use of force events against Mr. Snukis by the Evansville Police Department prior to his death was provided to me before the second autopsy on September 22, 2019. This pertinent information led to the decision to perform additional dissections during the autopsy.

   G. Mr. Snukis was experiencing methamphetamine intoxication at the time of death, and his autopsy did show cardiomegaly, with marked left ventricular hypertrophy. While Mr. Snukis could have experienced a sudden cardiac death from his underlying cardiac disease and methamphetamine intoxication, his positional-compression asphyxiation event was a significant intervening factor, and the terminal cause of Mr. Snukis' death. Cardiomegaly and methamphetamine intoxication made the decedent, Mr. Snukis, more susceptible to positional compression asphyxiation.

8. Following my review of the materials provided, it is my opinion, expressed with a reasonable degree of medical certainty, that Edward Snukis died from asphyxiation due to positional compression.

I affirm under the penalties of perjury that the foregoing statements are true and correct. Signed under the penalties of perjury this 24th day of October, 2023.

*Cyril H. Wecht*
Cyril H. Wecht (Oct 24, 2023 14:07 EDT)

Cyril H. Wecht, M.D., J.D.

# Wecht Affidavit

Final Audit Report 2023-10-24

| | |
|---|---|
| Created: | 2023-10-24 |
| By: | Mark Miller (mmiller@indianalawonline.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA-Hwc0vyOVVJuF2pxjg483XulbX7riG6L |

## "Wecht Affidavit" History

- 📄 Document created by Mark Miller (mmiller@indianalawonline.com)
  2023-10-24 - 5:56:08 PM GMT

- ✉️ Document emailed to wechtpath@cyrilwecht.com for signature
  2023-10-24 - 5:56:52 PM GMT

- 📄 Email viewed by wechtpath@cyrilwecht.com
  2023-10-24 - 5:58:17 PM GMT

- ✍️ Signer wechtpath@cyrilwecht.com entered name at signing as Cyril H. Wecht
  2023-10-24 - 6:07:00 PM GMT

- ✍️ Document e-signed by Cyril H. Wecht (wechtpath@cyrilwecht.com)
  Signature Date: 2023-10-24 - 6:07:02 PM GMT - Time Source: server

- ✅ Agreement completed.
  2023-10-24 - 6:07:02 PM GMT

Adobe Acrobat Sign