UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| EDWARD C. SNUKIS, JR. and SAMANTHA SNUKIS, Co-Administrators of the Estate of Edward C. Snukis, Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) ) | CASE NO. 3:21-cv-00135-MPB-MJD |
| CITY OF EVANSVILLE, INDIANA; MATTHEW O. TAYLOR, in his individual capacity as an Evansville police officer; TREVOR KOONTZ, in his individual capacity as an Evansville police officer; and NICHOLAS HACKWORTH, in his individual capacity as an Evansville police officer, Defendants. | ) ) ) ) ) ) ) ) ) ) | |

**PLAINTIFFS SURREPLY TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Come now the Plaintiffs by counsel and submit their Surreply to the Replies in support of Motion for Summary Judgment filed by the Defendant Officers (ECF 157) and the City of Evansville (ECF 158), respectively, on November 13, 2023.

**I.
INTRODUCTION**

Plaintiffs submit their Surreply Brief pursuant to Local Rule 56-1. The Local Rule states that "A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response." 15 out of 25 pages of the Defendant Officers Reply contain direct and indirect objections to the admissibility of all of Plaintiff's designated evidence. The relevant portions of the Officers Reply were incorporated into the City Reply (ECF 158 pp. 1-2). As the City Reply

makes no objections to the Plaintiffs' evidence, Plaintiffs will reference this Surreply as their response to the City Reply.

## II.
## ARGUMENT

### A. Plaintiffs' Statement of Disputed facts is supported by designated evidence.

In Section I.A of the Reply, Defendants argue that this Court should disregard the entirety of Plaintiffs' Statement of Material Facts in dispute, in effect arguing that the Court should disregard the entirety of Plaintiffs Designation of Evidence. (ECF 157 pp. 1-7)

Defendants argue that the format of Plaintiffs' Statement of Disputed Facts does not comply with Local Rule 56-1. However, the cases cited by Defendants relate to the failure of the non-movant to designate any evidence in the record supporting the asserted disputed material facts. See, e.g., Hinterberger v. City of Indianapolis, 966 F.3d 523 (7th Cir. 2020) ("Statement misrepresented the evidence, contained inaccurate and misleading citations to the record, and presented improper and unsupported argument rather than materially disputed facts"); Childress v. Experian Info. Servs., Inc., No. 1:12-CV-01529-TWP, 2014 WL 3740368, at *4 (S.D. Ind. July 30, 2014), aff'd sub nom. Childress v. Experian Info. Sols., Inc., 790 F.3d 745 (7th Cir. 2015) ("While the brief contains a section with this heading, Ms. Childress's response merely refers to the entirety of her 'factual statements set forth in her Motion for Class Certification and Brief in Support thereof, including all exhibits referenced and incorporated therein.' …. This is not sufficient to identify 'potentially determinative facts' that are relevant to this motion." *Cf,* Couvillion v. Speedway, L.L.C., No. 1:14-CV-1842-DKL-SEB, 2016 WL 233661, at *1 (S.D. Ind. Jan. 20, 2016), aff'd sub nom. Couvillion v. Speedway LLC, 673 F. App'x 558 (7th Cir. 2016).

Defendants also rely on the Local Rules Advisory Committee Comments Re: 2002 Amendment. (ECF pp. 3-4) Defendants' reliance on those comments is misplaced. The comments state in their entirety that "Although the strict formatting requirements of former Rule 56.1(h) are eliminated, separately numbering the facts is recommended for presentation clarity."

Defendants also argue that "Plaintiffs rely on statements that are not supported by designated evidence, including [sic]." (ECF 157 p. 4). Defendants do not identify any specific statement that is not supported by designated evidence as there is none. See Plaintiffs' Response to Motion for Summary Judgment (ECF 140 pp. 1-13).

Defendants then argue that Plaintiffs improperly rely on argument of counsel "regarding what the video shows, often misconstruing what is plainly seen on video." (ECF 157 p. 4) Defendants cite a few examples in Plaintiffs' Response. (ECF 157 pp. 4-5). The essence of this objection is not that there is no designated evidence but rather that the Defendants disagree with what that evidence shows. That is an issue for the Court to determine upon its review of the designated evidence, but it is not a basis for striking the entirety of Plaintiffs statements and designated evidence.

Defendants then argue that statements made by Sierra Snukis are inadmissible hearsay and opinion statements. (ECF 157 p. 5; see also ECF 157 p. 16)

During the deposition of Ed's daughter, Sierra, she was asked about the bodycam footage showing her father's death. Under questioning by the Defendants' counsel, she said:

> Q What about the body cam footage leads you to believe that the police killed your father?
> A Because my dad said, "I can't breathe."
> Q Anything else that stands out to you?
> A I just heard him dying on the police cam. I heard him moaning, I heard him dying, I heard him saying multiple times, "I can't breathe." (Ex. G—Sierra Snukis Depo., pp. 21-22).

(ECF 140 pp. 11-12)

Defendants do not develop their hearsay or opinion testimony arguments for striking this testimony. Defendants also fail to point out that they have designated video evidence in support of their statements of fact describing what is happening on the video. (ECF 120 pp. 4-12)

Instead, Defendants argue that "the law is clear that the video controls." (ECF 157 pp. 5-6) Defendants cite Williams v. Brooks, 809 F.3d 936, 942 (7th Cir. 2016) in support of this argument. The holding in *Brooks* is more nuanced than Defendants suggest:

> When the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape. *Scott v. Harris,* 550 U.S. 372, 379–80, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Id.

In other words, this Court should consider Plaintiffs' version of the events and may only disregard that version of the events if it is "blatantly contradicted by the videotape." Plaintiffs agree that the video might control under those limited circumstances. Whether or not the video ultimately controls is a decision for this Court after review of the relevant evidence.

Defendants next argue that some of Plaintiffs statements fail to cite to "any designated evidence." (ECF 157 p. 6) An examination of Plaintiffs' Response reveals that the Defendants statement is untrue. Each of the referenced statements is supported by citations to the body camera footage of Officers Taylor, Koontz, or Hackworth. (ECF 140 pp. 8-11)

In summary, Plaintiffs have designated admissible evidence that supports each of their Statements of Material Facts in Dispute. The Defendants' attempt to strike all of Plaintiffs Statements and designated evidence should be denied.

### B. Plaintiffs do not rely on inadmissible hearsay.

Defendants next argue that Plaintiffs may not rely upon the unsworn statements of Christy McGown. (ECF 157 p. 7) Defendants argue that because Ms. McGowan's statements are unsworn and not contained within an affidavit, they are inadmissible and should be stricken.

Ms. McGowan's statement is referenced in the Pusins Report, Ms. McGowan made her statements to an EPD investigator:

> 140. Witness Christy McGowan told the EPD in her statement that Snukis' arms were caught underneath his body and that it was difficult for him to get his arms out while both officers were on top of him. McGowen also told EPD that one officer had his arm around Snukis' throat, that Snukis became unresponsive and that one officer struck Snukis in the head with his fist.
>
> (ECF 140 p. 13; ECF 141-1 Pusins Aff., ¶ 140, 144-155)

Defendants rely solely on Federal Rules of Evidence 801(c) and 802 to support their argument.

Since this evidence is referenced in an expert report, the Court should instead look to Fed. R. Evid. 703, which provides that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

In Litton v. Navien, Inc., No. 420CV00251JMSKMB, 2023 WL 2712369, at *6 (S.D. Ind. Mar. 30, 2023), this Court addressed a similar objection. This Court held as follows:

> "The Seventh Circuit has noted that, at the summary judgment stage, courts 'review only those facts whose substance would be admissible at trial under a form permitted by the Federal Rules of Evidence, although the form produced at summary judgment need not be admissible." *Wragg v. Village of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Dr. Miller would be a competent witness to testify regarding his investigation and conclusions. Even if the report itself is ultimately not admissible, the report functions to disclose the contents of Dr. Miller's trial testimony and the Court will not exclude it on hearsay grounds at the summary judgment stage.

Defendants acknowledge that the McGowan statement is contained in an EPD police report. Pusins has stated in his affidavit regarding his experience as a law enforcement officer and expert witness. (ECF 157 p. 7) The Defendants do not argue that Pusins' is not competent or that his summary of McGowan's statements is not accurate, only that it is hearsay.

Defendants rely on unsworn statements in their own reports in support of their motion for summary judgment. See, e.g., ECF 120 p. 4, ¶ 3. The Defendants cannot have it both ways.

Based on the foregoing, the Court should deny the objection to the McGowan statement.

**C. Plaintiffs do not rely on inadmissible opinion testimony.**

  **i. The Defendants argue that expert witnesses may not draw legal conclusions.**

The Defendants claim that Pusins statements about "What "[r]easonable officers know and understand" or what "[r]easonably prudent officers know and understand" and similar arguments must be stricken because they are "legal opinions." (ECF 157 p.9) Defendants ask this Court to strike the entirety of the Pusins affidavit without further argument or explanation.

Defendants acknowledge that courts allow police practices experts to testify that an officers' "actions deviated from nationally accepted standards of police practices," *Damiani for Est. of Damiani*, 2018 WL 4095080, at *6. (ECF 157 p. 9) The following paragraphs in Pusins Report are directly related to nationally accepted standards of police practices and deviations therefrom: ECF 141-1 ¶¶16-65, 83-84, 102, 104, 127, 141-142, 144, 153-155, 156, 162-163, 169, 170, 173.

Other sections of Pusins report contain summaries of the evidence that he reviewed and considered to render his opinions (141-1 ¶¶ 14-15, 66-80, 85-93, 116-118, 121-122, 124-126,

134-140, 145-146, 149-151, 160, 168, 171-172). There are also introductory and summary paragraphs that identify Pusins credentials and methodology (ECF 141-1 ¶¶ 1-13, 176)

The remaining statements and opinions are set forth here: 141-1 ¶¶ 81-82, 94-101, 103, 105-107, 108-115, 119-120, 123, 128 -133, 141-143, 147-148, 152, 156-159, 164-167, 174-175. Defendants have not explained how any of these statements and opinions are objectionable other than that they call for legal conclusions. *Damaiana* provides some guidance on how to examine this issue.

> However, Waller will be permitted to testify that the officers deviated from generally accepted police practices (second opinion). Whether the officers violated accepted police practices does not determine the outcome of Plaintiff's constitutional claims. See Naeem, 444 F.3d at 610. It will also be helpful for the jury to hear what constitutes generally accepted police practices since the case involves both the use of a taser and a firearm. See Kennedy v. Schlosser, No. C11–1032, 2012 WL 6128439, at *4 (N.D. Iowa Dec. 10, 2012) (finding that Waller could testify generally regarding proper police practices but could not testify that the officers' actions constituted excessive force). Additionally, Waller may testify that the officers recklessly approached the situation without first gathering information (third opinion). This opinion helps the jury by providing them with context concerning the events leading up to the shooting. Williams v. Indiana State Police Department., 797 F.3d 468, 483 (7th Cir. 2015), cert. denied, 136 S. Ct. 1712 (2016) (citation omitted) ("The sequence of events leading up to the seizure is relevant because the reasonableness of the seizure is evaluated in light of the totality of the circumstances.").
>
> Damiani for Est. of Damiani v. Allen, No. 416CV00053RLYDML, 2018 WL 4095080, at *6 (S.D. Ind. Aug. 28, 2018)

Of the remaining statements and opinions, only statement 165 refers to the use of excessive force. (141-1 ¶ 165) But the context is distinguishable from *Damiana*. Statement 165 says:

> 165. It is also my opinion that the EDP OG 359.00 on the Use of Force fails to provide language addressing the officers responsibility and duty to intervene to prevent and stop the use of excessive force by another officer when it is safe and reasonable to do so.

This opinion does not say that the officers used excessive force. It simply states what a reasonable officer should do when faced with a situation involving an officer's use of excessive force.

A case involving the City of Evansville is also instructive. Becker v. City of Evansville, No. 312CV00182TWPMPB, 2016 WL 6395868, at *5 (S.D. Ind. Oct. 28, 2016):

> However, specialized knowledge regarding the use of force by police may be an area of knowledge that jurors could benefit from the knowledge, skill, experience, training, or education of an expert witness. A typical juror likely will not have experience or knowledge of the various options available to police for using force and how those options should be adapted to the circumstances and changing circumstances confronting police. Similarly, a typical juror likely will not have experience or knowledge of the standards for police practices when executing a warrant and effectuating an arrest. Thus, the specialized knowledge of an experienced, qualified police officer may be helpful to the trier of fact in understanding the evidence and determining facts in issue, and therefore, Dr. Chapman's anticipated testimony is relevant.

In conclusion, the Defendants have failed to make their case on why any specific statement or opinion in the Pusins report should be stricken.

    ii.      **Pusins' did not render any credibility opinions in his affidavit.**

The Defendants next argue that an expert witness may not render "credibility opinions." (ECF 157 pp. 10-11) Defendants assert without further illumination that "Pusins offers opinions on how the body camera footage to Defendant Officers' reports and their prior testimony." (ECF 157 p. 11) See also Pusins Aff., ¶¶68, 75-80, 87, 90-93, 102-103, 125, 134-143.

This issue was squarely addressed in In re Est. of Lee v. City of Washington, No. 3:09-CV-00016-RLY, 2010 WL 4778725, at *3–4 (S.D. Ind. Nov. 16, 2010). This Court explained the difference between a credibility opinion and an expert explaining the conclusions he draws from the evidence.

> Clouse concludes his report with this statement: "Further, it appears some facts and scenarios by [Sergeant] Tolliver and [Sergeant] Mize, as well as [Officer] Cox, may have been invented to resolve and justify an otherwise unreasonable use of force against

Stephen Todd Lee." (Clouse Report at 28). Clouse bases this statement on the officers' slightly differing testimony about where Lee held his gun (waist or chest area), that Cox is not sure whether he heard Sergeant Tolliver identify himself as a police officer, testimony about the direction Lee turned and whether Lee stumbled backwards as he turned. (Clouse Dep. at 65–67). While an expert is free to explain the conclusions he draws from the evidence, he may not opine as to whether or not he believes that the officer's prior statements and/or testimony is credible. Good Shepherd, 323 F.3d at 564; White, 2008 WL 4372019, at *6; see also Richman v. Sheahan, 415 F.Supp.2d 929, 941–42 (N.D.Ill.2006).

In other words, the expert can disagree with a witness but cannot call him or her a liar. To rule otherwise would make it impossible to disagree with the City's version of what happened in this case.

### iii. Pusins did not render any medical opinions.

Defendants next argue that the Court should strike Pusins' opinions about "medical conditions." (ECF 157 ¶¶ 11-13) It is unclear what Defendants mean by this phrase. Regardless, Defendants assert without any authority that certain statements made by Pusins in his report are outside his area of expertise.

Defendants have not questioned Pusins qualifications as a police expert. Pusins has not claimed to be a medical doctor. The record is replete with references to law enforcement policies that demonstrate that officers are expected to recognize medical emergencies and act accordingly. The opinions identified by Defendants on close examination are clearly not medical opinions but are opinions about "nationally accepted standards of police practices."

(Dkt. 147-1 at ¶61) is explicitly a statement about national standards for police officers and contains no reference to medicals opinions. None of the referenced statements purport to render medical opinions outside the context of police activity.

Defendants fail to point out that national and local policies make reference to medical conditions and direct officers on steps to be taken and information that they should know. See, e.g., (ECF 141-1 ¶ 46, 51, 52, 57, 58, 60, 61, 62-64)

iv. **Wecht's opinion as it relates to when Snukis died should not be stricken as it is sufficiently supported.**

Defendants object to Dr. Wecht's statement that "Mr. Snukis died suddenly while restrained by and in the custody of the Evansville Police Department in Evansville, Indiana." (ECF 147-3 at ¶7A.) Defendants claim that Dr. Wecht did not provide any basis for how he arrived at those opinions. Dr. Wecht described in detail the information relied upon in rendering his opinions. (ECF 147-3)

There is no evidence or dispute that Mr. Snukis died while in the custody of the Evansville Police Department. As for Dr. Wecht's opinion that Mr. Snukis died suddenly, the materials relied upon have been identified and Dr. Wecht is scheduled for a deposition in this case.

**D. Evidence designated by Plaintiffs should not be stricken.**

Defendants argue that policy violations and the investigation of Snukis' death are irrelevant to Plaintiffs' Fourth Amendment claims. To the extent substantiated and argued above regarding Mr. Pusins report, Plaintiffs disagree with this assertion. Plaintiffs also disagree that these opinions should be disregarded in the Court's determination of the City's Motion for Summary Judgment and the Plaintiffs response thereto. (ECF 146) Defendants do not address the admissibility of such evidence in that context.

Defendants next argue that statements made by Taylor to Koontz before and after the deadly encounter with Mr. Snukis should be stricken. These statements are not offered to prove an evil intent but rather to help explain why Koontz did what he did on that fateful day. See ECF 141 ¶ 149 et seq. This testimony is also relevant to Plaintiffs' *Monell and Canton* claims against the City. (ECF 146)

/s/Mark E. Miller
Mark E. Miller, Attorney No. 10458-82
Mark Miller Law Office
915 Main Street – Suite 203
P.O. Box 3009
Evansville, IN 47730
Phone: (812) 303-3444
mmiller@indianalawonline.com
*Attorney for Plaintiffs*

### Certificate of Service

I hereby certify that on November 30, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record in this case.

By: /s/ Mark E. Miller
Mark E. Miller, Attorney No. 10458-82
*Attorney for Plaintiffs*